IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ABB INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 04-04016-CV-C-SOW |
| ) | |
| LOCAL 2379, UNITED AUTOMOBILE ) | |
| AEROSPACE AND AGRICULTURAL ) | |
| IMPLEMENT WORKERS OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court are plaintiff ABB Inc.'s Motion for Summary Judgment (Doc. #37) and defendant Local 2379, United Automobile Aerospace and Agricultural Implement Workers of America's Motion for Summary Judgment (Doc. #39). Both motions have been fully briefed by the parties. For the reasons stated below, plaintiff's motion is granted in part and denied in part and defendant's motion is granted in part and denied in part.

I. Background

Plaintiff ABB, Inc. ("ABB") has alleged in its First Amended Complaint that defendant Local 2379, United Automobile Aerospace and Agricultural Implement Workers of America (the "Union") breached one or more labor agreements between the parties in violation of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §185 ("Section 301"). The Union claims that the labor agreements had expired prior to the challenged activities. Alternatively, the Union contends that its activities did not violate any of the parties' labor agreements. In a Counterclaim, the Union has alleged that if the Court determines that the parties' Supplemental Agreement survived the January 31, 2002 expiration of the parties' collective bargaining

agreement, then ABB breached said Supplemental Agreement.

The undisputed material facts relevant to the parties' motions for summary judgment are as follows:

Defendant Union is the exclusive collective bargaining agent for approximately 750 hourly production and maintenance workers employed by plaintiff ABB at its Jefferson City, Missouri Plant. ABB manufactures electrical distribution transformers at the plant. On or about January 27, 1999, ABB and the Union entered into a three year collective bargaining agreement (the "CBA") covering the terms and conditions of employment for Union-represented employees at the Jefferson City Plant. The Union adds that the CBA began on February 1, 1999 and terminated on January 31, 2002. Pursuant to Article IX, Section 3 of the CBA, the parties agreed that "all laws of the State of Missouri shall govern regarding the administration of industrial injury as required."

On February 1, 1999, ABB implemented a policy requiring Union-represented employees to use their paid leave time (personal business and/or vacation days) as defined in the CBA to attend doctor's or therapy visits during work time following allegedly work-related injuries or illnesses. Following the implementation of this policy, on February 22, 1999, the Union filed a grievance against ABB on behalf of hourly employee Mryl "Jim" Copeland. This grievance protested the company's policy which required Copeland to use either a vacation or a personal business day to go to a workman's compensation doctor's appointment. On March 9, 1999, the Union filed a grievance on behalf of bargaining unit employee Donald Sneed. This grievance also protested the company's requirement that vacation or personal leave be used for time missed from work receiving medical treatment for a workers' compensation injury. These two

2

grievances were consolidated and jointly processed by the parties through the grievance procedure.

On April 29, 1999, the Union filed a grievance on behalf of hourly employee Greg Asher protesting Asher's receipt of an unexcused occurrence under the company's attendance policy because of time he missed from work due to an on-the-job injury. Following ABB's first step denial, the Union appealed the Asher grievance to the second step of the contractual grievance procedure. ABB and the Union settled this grievance on October 21, 1999. The written, signed agreement settling this grievance is referred to by the parties as "the Supplemental Agreement" which provides, in relevant part, that ABB "will no longer charge represented employees with an unexcused occurrence for absences due to disabilities, whether work-related (workers' compensation) or non-work-related (A&S or short term disability)." The Supplemental Agreement provides, however, that:

> An exception to this Agreement is that any represented employee who refuses to use either vacation and/or personal business (PB) days for post injury/illness doctors' and therapy visits during work hours will be charged an unexcused occurrence for the time away from work.

On March 9, 2000, ABB and the Union reached an agreement to resolve the consolidated Copeland and Sneed grievances by retroactively reinstating paid leave time as defined in the CBA for the period from February 1, 1999 through March 15, 1999. The Union agreed that represented employees would use their paid leave time for post-injury medical treatment.

From the implementation of the CBA through the present, ABB's policy has required Union-represented employees to use paid leave time for doctor's visits scheduled during work hours following work-related injuries. Paid leave time is automatically deducted from an

3

employee whenever the employee leaves work to attend a doctor's visit during work hours.

The CBA expired on January 31, 2002 by its own terms. The last paragraph of the CBA provided that, "Upon termination of this Agreement, all additions to the Agreement that may have been negotiated separately between the parties as addendums [sic] to the Agreement shall automatically also terminate."

In a letter to ABB human resources manager Buckley, dated April 7, 2003, International Union, UAW servicing representative Matt Snell questioned the legality of the Supplemental Agreement's fourth paragraph and requested that the company agree to strike those provisions and negotiate in their place language that comports with the Missouri Workers' Compensation laws. The company refused to take such action. Therefore, the Union filed a lawsuit in late April of 2003 seeking a declaratory judgment that the fourth paragraph of the Supplemental Agreement violated the Missouri Workers' Compensation Laws.

The Union states that in conjunction with its lawsuit, the Union president, Charlie Fisher, prepared a form "concerning the Supplemental Agreement's use of paid leave provision" in October of 2003. The leave form states:

USE OF LEAVE REFUSAL

> In line with the lawsuit the Union has filed challenging the legality of the October 21, 1999 Supplemental Agreement between ABB Inc. and UAW Local 2379, I refuse to use either vacation leave or personal (PB) leave for time I spend out of the plant during working hours receiving medical treatment/care for my job-related injury. I recognize that this may result in my receiving an unexcused occurrence for time spent away from work receiving such medical treatment/care.

_____         _____
                                                                                         Date

4

Case 2:04-cv-04016-SOW   Document 45   Filed 07/07/06   Page 4 of 11

USE OF LEAVE UNDER PROTEST

> In line with the lawsuit the Union has filed challenging the legality of the October 21, 1999 Supplemental Agreement between ABB Inc. and UAW Local 2379, by my signature below I protest having to use vacation leave or personal (PB) leave for time I spend out of the plant during working hours receiving medical treatment/care for my job-related injury.

_____   _____
                                            Date

INSTRUCTIONS

To all Union-represented employees scheduled to receive medical treatment/care away from the plant during their working hours for on-the-job injury:
1. Please read the above and then sign and date the option of your choice.
2. After you have signed and dated, please make two copies of this document, one for yourself and the other for the Union, before turning the original in to the plant nurse.
3. If you have any questions, please speak with Local 2379 president Charlie Fisher <u>before</u> signing this document.

According to Fisher's deposition testimony, he made the form available to his co-workers by placing copies in the bin attached to the Union's bulletin board in the plant. Fisher also prepared an article informing his co-workers about the form. The article appeared in a handbill the Union distributed outside the plant on or about October 30, 2003. The handbill noted the pending lawsuit and stated, "If you are told you must use vacation or personal time during work hours for work related medical treatment/care and wish to contest the policy, please fill out one of the forms provided by the Union and follow the directions as indicated on the form."

Union-represented employee Myrl "Jim" Copeland was the only employee to complete and submit the leave form. Copeland completed one form on October 23, 2003 and selected the "Use of Leave Under Protest" option. On November 6, 2003, Copeland submitted another form

5

on which he selected the "Use of Leave Under Protest" option.

Fisher has testified that after no more than six months, he removed the remaining forms from the bin on the Union bulletin board.

The parties have failed to negotiate a successor collective bargaining agreement. Following an impasse in those negotiations, ABB unilaterally imposed its final contract offer on February 1, 2004, and it remains in place today.

ABB's leave policy has been upheld as not being in violation of either the Missouri Workers' Compensation Law or the Fair Labor Standards Act. Local 2379 v. ABB, Inc., 412 F.3d 982 (8th Cir. 2005); Copeland v. ABB, Inc., 2006 WL 290596 (W.D. Mo. Feb. 7, 2006).

## II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of

6

every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

### III. Discussion

A. Alleged Breach of the CBA, Supplemental Agreement, and Grievance Settlement Agreement by the Union

Plaintiff ABB has brought a one count breach of contract claim against the Union. ABB alleges that the Union breached the parties' labor agreements in violation of Section 301. ABB relies on Section 301 of the Labor Management Relations Act as the basis for this Court's subject matter jurisdiction over its claim. Section 301 provides that "[s]uits for violations of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. §185(a).

Plaintiff ABB asserts that under the parties' CBA, Supplemental Agreement, and Grievance Settlement Agreement, the parties agreed that employees must use paid leave to attend follow-up medical appointments during working hours. Plaintiff ABB alleges that the Union breached these agreements by encouraging its members to take actions that violated the agreements. Specifically, ABB faults the Union for: (1) preparing leave forms in October of 2003 that allowed employees to state that they refused to use, or protested having to use, paid leave for working hours spent receiving medical treatment for a job-related injury; (2) notifying Union members of the availability of the form; (3) making the forms available to members; and (4) encouraging employees to submit the forms. All of these activities took place during or after October of 2003.

It is undisputed that the CBA expired on January 31, 2002, almost two years before the

Union's conduct about which ABB complains. Section 301 does not confer subject matter jurisdiction upon the federal district courts to entertain suits to enforce expired contracts. *See* Bauer v. RBX Industries, 368 F.3d 569, 578-79 (6th Cir. 2004)("Jurisdiction in a §301 case is premised upon the existence of a contract . . . ."). Therefore, this Court lacks subject matter jurisdiction over ABB's claim against the Union for an alleged breach of the parties CBA since the claim is premised upon conduct that occurred more than twenty months after the CBA expired.

ABB takes the position that both the Supplemental Agreement and the Grievance Settlement Agreement survived the expiration of the CBA and provide a basis for subject matter jurisdiction in this case. The Union suggests that both of these agreements expired at the same time as the CBA. ABB responds that the Union's claim that the Supplemental Agreement had expired is "disingenuous" because the Union spent almost two years in litigation against ABB seeking to have the Supplemental Agreement invalidated without once claiming that the Supplemental Agreement had expired. If the Supplemental Agreement expired in January of 2002, ABB points out, then why did the Union initiate litigation in April of 2003 seeking to have the Supplemental Agreement declared invalid pursuant to the Missouri's Workers' Compensation Law?

Nothing in the plain language of either agreement indicates that they have expired. Neither agreement includes a specific termination date. The Supplemental Agreement states, "[t]his Agreement is binding on the parties and may not be altered unless a further negotiations process is necessitated due to our overall attendance at work, potential abuses of disability and/or any other attendance-related matters that would impact the security of the business." ABB adds

8

that the Supplemental Agreement and the Grievance Settlement Agreement are agreements reached between the parties to resolve specific employee grievances. Neither of these agreements was incorporated into the CBA as an addendum to the CBA. In fact, in the CBA, the parties recognized that while addenda would expire with the termination of the CBA, grievance settlement agreements under the CBA "are binding and cannot be changed."

The Court finds that the Supplemental Agreement and the Grievance Settlement Agreement survived the expiration of the CBA and provide a basis for this Court to exercise subject matter jurisdiction.

ABB contends that the Union's actions in the Fall of 2003 breached the Supplemental Agreement and the Grievance Settlement Agreement. The Union responds that there is no language in either the Supplemental Agreement or the Grievance Settlement Agreement that prohibits the actions taken by Union president Fisher in October of 2003. Plaintiff ABB has not identified any language in either agreement to controvert the Union's argument. Instead, ABB simply argues that by creating the leave forms and allegedly encouraging employees to use the forms, the Union breached the agreements. The Court is not persuaded by ABB's argument that a breach of either agreement has occurred.

Accordingly, plaintiff's motion for summary judgment on its claim is denied and defendant's motion for summary judgment on plaintiff's First Amended Complaint is granted.

B. <u>ABB's Alleged Breach of the Supplemental Agreement</u>

The Union claims that if the Supplemental Agreement survived the expiration of the CBA, then ABB violated the Supplemental Agreement by not allowing employees to take an unexcused absence under the attendance policy rather than using paid leave time to attend

9

follow-up medical appointments related to an on-the-job injury.

There is nothing in the plain language of the Supplemental Agreement that requires ABB to give an employee the option of taking an unexcused absence rather than using paid leave to attend a medical appointment during working hours. Rather, if an employee "refuses to use [paid leave] for post injury/illness doctors' and therapy visits during working hours," then ABB can charge the employee an unexcused absence.

In addition, in the Grievance Settlement Agreement, entered into by the parties after the Supplemental Agreement, the Union agreed that employees would use paid leave from that time forward. Nothing in the Grievance Settlement Agreement gives an employee the option of taking an unexcused absence rather than using paid leave.

There is no basis for finding that ABB breached either the Supplemental Agreement or the Grievance Settlement Agreement.

## IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that plaintiff ABB Inc.'s Motion for Summary Judgment (Doc. #37) is granted in part and denied in part. It is further

ORDERED that defendant Local 2379, United Automobile Aerospace and Agricultural Implement Workers of America's Motion for Summary Judgment (Doc. #39) is granted in part and denied in part. It is further

ORDERED that plaintiff's motion for summary judgment on the issue of liability with respect to plaintiff's First Amended Complaint is DENIED and defendant's motion for summary judgment on the issue of liability on plaintiff's First Amended Complaint is GRANTED as the

Court finds that the Union did not breach either the Supplemental Agreement or the Grievance Settlement Agreement by its actions in October and November of 2003. It is further

ORDERED that plaintiff's motion for summary judgment on defendant's First Amended Counterclaim is GRANTED and defendant's motion for summary judgment on defendant's First Amended Counterclaim is DENIED as the Court finds that there was no breach of the Supplemental Agreement by plaintiff ABB, Inc. It is further

ORDERED that each party shall be responsible for its own attorneys' fees and costs.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: July 7, 2006